UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

MELANIE HARRIS,

                Plaintiffs,

-against-

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES,

                Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, MELANIE HARRIS, by and through her undersigned attorneys and hereby sues Defendants, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES ("CARNIVAL"), and alleges:

**JURISDICTION, VENUE, AND PARTIES**

1. Plaintiff, MELANIE HARRIS, is a resident and citizen of the State of Florida.

2. CARNIVAL is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida.

3. CARNIVAL accordingly is a citizen both of Panama and of Florida for jurisdictional purposes.

4. Admiralty jurisdiction exists pursuant to 28 U.S.C. §1333.

5. At all material times, Defendant CARNIVAL has conducted ongoing substantial and not isolated business activities in Miami-Dade County, Florida, in the Southern District of Florida, so that in personam jurisdiction over the Defendant exists in the United States District Court for the Southern District of Florida.

1

6. At all material times, CARNIVAL has engaged in the business of operating maritime cruise vessels for paying passengers, including the Plaintiff.

7. In the operative ticket contract, CARNIVAL requires fare paying passengers such as the Plaintiff, to bring any lawsuit against CARNIVAL arising out of injuries or events occurring on the cruise voyage in this federal judicial district. Accordingly, venue is proper in this Court.

8. Venue is also proper in this district because CARNIVAL's principal places of business are located within this district.

9. Plaintiff has complied with all conditions precedent to bringing this action. Plaintiff gave CARNIVAL timely written notice of the claim as required by the ticket contract, by a letter of March 18, 2022, a copy of which is attached as Exhibit 1.

## FACTS APPLICABLE TO ALL COUNTS

10. At all material times, CARNIVAL was engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operated, among other vessels, the "CARNIVAL HORIZON."

11. At all material times, including the injury date of March 5, 2022, the Plaintiff was a fare paying passenger aboard the CARNIVAL HORIZON (the "subject vessel") and in that capacity was lawfully present aboard the vessel.

12. On March 5, 2022, the Plaintiff was traveling by a motorized wheelchair, descending a gangway ramp designated and intended for use by passengers disembarking the ship in Port of Miami.

13. The gangway was very crowded with other disembarking passengers walking in front of and behind the Plaintiff.

14. While exiting the passenger gangway onto the third floor of Terminal D, in Port of Miami, the front wheels of Plaintiff's wheelchair suddenly, and without warning, dropped down on a very steep metal ramp and the chair toppled forward catapulting Plaintiff's body out of her chair and onto the cement floor. Plaintiff landed headfirst onto the ground.

15. From the vantage point of riding in her wheelchair behind a crowd of other disembarking passengers, the height of the decline in ramp was not open and obvious to Plaintiff. Moreover, there were no alternate paths available for Plaintiff to take.

16. Two CARNIVAL employees were standing close by the location of Plaintiff's fall.

17. Neither crew member directed or cautioned Plaintiff of the steep decline prior to her fall, despite their close proximity to and knowledge of Plaintiff's wheelchair use, nor did they assist Plaintiff or call for help after she fell.

18. Rather, and callously, while Plaintiff remained sprawled on the floor, Defendant's employees complained that Plaintiff's body was blocking other passengers from disembarking the ship and they insisted that Plaintiff's daughter remove Plaintiff out of the way.

19. Plaintiff's daughter called 911 while Plaintiff remained on the ground for almost an hour until police and emergency medical services arrived at the scene. Plaintiff was transported to the hospital by ambulance from the incident location.

20. CARINIVAL is on notice of numerous prior substantially similar incidents involving passengers injured while disembarking its vessels in a wheelchair including, but not limited to:

   a. On September 22, 2018, Edward Anchrum while a passenger onboard the *Carnival Glory* was injured when using a wheelchair during disembarkation. See *Anchrum v. Carnival Corporation*, Case No.: 2019-cv-23636.

b. On October 20, 2018, Sandra Hudson while a passenger onboard the *Carnival Horizon* (the subject vessel) was injured when using a wheelchair during disembarkation. See *Hudson v. Carnival Corporation*, Case No.: 2019-cv-24332.

c. On January 20, 2020, Dorothy Crowe while a passenger onboard the *Carnival Sunshine* was injured when using a scooter during disembarkation. See *Crowe v. Carnival Corporation*, Case No.: 2020-cv-25020.

d. On October 3, 2013, Hazel Hunter while a passenger onboard the *Carnival Sensation* was injured when using a wheelchair during disembarkation. See *Hunter v. Carnival Corporation*, Case No.: 14-cv-23200.

e. On October 7, 2019, Geraldine Johnson while a passenger onboard, the *Carnival Liberty* was injured during disembarkation on the gangway. See *Johnson v. Carnival Corporation*, Case No.: 20-CV-23333.

**COUNT I – NEGLIGENT INSPECTION AND MAINTENANCE OF RAMP**

Plaintiff re-alleges all allegations pled in paragraphs 1 through 20 above as if alleged fully herein.

21. At all material times, including the injury date of March 5, 2022, the subject vessel and ramp referenced above, were owned, operated, and controlled by CARNIVAL.

22. At all material times, CARNIVAL owed the Plaintiff, as a fare-paying passenger lawfully onboard a passenger vessel it operated, a duty of reasonable care under the circumstances, including the duty to take reasonable steps to maintain the ramp where Plaintiff fell, in a reasonably safe condition.

23. Defendant and/or its agents, servants and/or employees breached its duty through the following acts and/or omissions:

   a. Failure to maintain the ramp in an even and safely leveled condition, in order to ensure wheelchair passengers exiting the ship, including the Plaintiff, were able to do so safely; and/or

   b. Failure to perform ramp maintenance including the responsibility to inspect the ramp for mis-leveled or uneven parameters and walking surfaces; and/or

   c. Failure to timely correct those conditions when they were or should have been detected; and/or

   d. Failure to adequately and regularly inspect the ramp and/or gangway to determine whether it was unreasonably dangerous; and required a transition plate at the place it dropped off/declined; and/or

   e. Failure to maintain the surface of the ramp and/or gangway in a reasonably safe condition in light of the anticipated use for disembarkation, which included regular use by passengers using wheelchairs and scooters; and/or

   f. Failure to adequately and regularly monitor the subject area to maintain it free of known, foreseeable dangerous conditions; and/or

   g. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the subject area is adequately and regularly inspected, monitored, cleaned and maintained free of dangerous conditions.

24. At all material times the ramp where the Plaintiff fell was in a high traffic area which were specifically designated for passengers exiting the ship. No alternative safe means of egress was available at the time to passengers entering and exiting the ship, such as the Plaintiff.

25. At all material times, CARNIVAL knew or should in the exercise of reasonable care have known of the dangerous condition of the ramp as referenced above.

26. CARNIVAL's actual or constructive knowledge was derived from prior use of the same or substantially similar ramps, prior fall instances on the same or similarly configured ramps, industry standards regarding ramps, the recurring nature of the dangerous conditions on

5

the ramp, and the length of time the ramp had been in an unsafe condition before the Plaintiff was injured, a length of time sufficient to invite corrective measures.

27. At all material times the dangerous condition of the ramp referenced above was neither known, open nor obvious to the Plaintiff, due to her inability to detect the change in elevation.

28. Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition of the ramp where Plaintiff fell, CARNIVAL failed before the time of the Plaintiff's injury to take reasonable measures to maintain the ramp in a reasonably safe condition by correcting its dangerous condition, by adjusting the positioning of the ramp for wheelchair passengers including the Plaintiff in order to prevent a fall due to the conditions. CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent. Defendant is vicariously for the negligent acts of the Defendant's employees and as such "a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021). See also *McLean v. Carnival*; Case No.: 22-CV-23187-Scola, Ecf. No. 26; (dated January 24, 2023).

29. As a direct and proximate result of CARNIVAL's negligence as described above the Plaintiff was thrown from her wheelchair and has thereby sustained and will continue in the future to sustain the damages alleged above.

30. As a direct and proximate result of the fall described above, the Plaintiff was injured in and about her body and extremities. She suffered pain therefrom, mental anguish, disfigurement, and the inability to lead a normal life. Furthermore, she incurred medical, hospital, and other out of pocket and health care expenses as a result of her injuries, the future medical and health care

expenses being reasonably certain to occur. She also sustained aggravation or acceleration of preexisting conditions. These damages are permanent or continuing in their nature and the Plaintiff will continue to sustain and incur these damages in the future.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant CARNIVAL for compensatory damages and the costs of this action.

## COUNT II – NEGLIGENT FAILURE TO WARN

Plaintiff re-alleges all allegations pled in paragraphs 1 through 20 above as if alleged fully herein.

31. At all material times, including the injury date of March 5, 2022, the subject vessel, including the ramp referenced above, were owned, operated, and controlled by CARNIVAL.

32. At all material times, CARNIVAL owed the Plaintiff, as a fare-paying passenger lawfully onboard the subject vessel it operated, a duty of reasonable care, including the duty to take reasonable steps to warn passengers, such as the Plaintiff.

33. Defendant and/or its agents, servants and/or employees breached its duty to warn the Plaintiff through the following acts and/or omissions:

   a. Failing to adequately warn of any elevation changes or other fall risks created by the condition of the ramp, including unevenness, mis leveling, or elevation changes, in order to ensure the safety of ingress and egress for passengers entering and exiting the ship, including the Plaintiff; and/or

   b. Failure to warn the Plaintiff of the unreasonably dangerous condition of the subject ramp and/or gangway; and/or

   c. Failure to warn Plaintiff of the dangers presented by the gangway, and/or;

   d. Failure to warn the Plaintiff of the risks and/or dangers associated with the unreasonably dangerous surface of the subject area, including but not limited to

      hazardous coefficiency of friction in light of the condition of the flooring surface; and/or

  e. Failure to warn passengers and the Plaintiff of other accidents previously occurring in same area, same ramp, gangway and/or same flooring surface.

34. At all material times the ramp where the Plaintiff was thrown from her wheelchair was in a high traffic area since they were specifically designated for passengers entering and leaving the ship. No alternative safe means of ingress or egress were available at the time to passengers entering and exiting the ship, such as the Plaintiff.

35. At all material times, CARNIVAL knew or should in the exercise of reasonable care have known of the dangerous condition of the ramp as referenced above.

36. CARNIVAL's actual or constructive knowledge was derived from prior use of the same or substantially similar ramps, prior fall instances on the same or similarly configured ramps, industry standards regarding ramps, the recurring nature of the dangerous conditions on the ramp, and the length of time the ramp had been in an unsafe condition before the Plaintiff was thrown from her chair, a length of time sufficient to invite corrective measures.

37. At all material times the dangerous condition of the ramp referenced above was neither known nor obvious to the Plaintiff, due to her inability to detect the change in elevation.

38. Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition of the ramp where Plaintiff fell, CARNIVAL failed before the time of the Plaintiff's injury to take reasonable measures to maintain the ramp in a reasonably safe condition by correcting its dangerous condition, by adjusting the positioning of the ramp for wheelchair passengers including the Plaintiff in order to prevent a fall due to the conditions. CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including

the Plaintiff and was thereby negligent. Defendant is vicariously for the negligent acts of the Defendant's employees and as such "a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021). See also *McLean v. Carnival*; Case No.: 22-CV-23187-Scola, Ecf. No. 26; (dated January 24, 2023).

39. As a direct and proximate result of CARNIVAL's negligence as described above the Plaintiff was thrown from her wheelchair and has thereby sustained and will continue in the future to sustain the damages alleged above.

40. As a direct and proximate result of the fall described above, the Plaintiff was injured in and about her body and extremities. She suffered pain therefrom, mental anguish, disfigurement, and the inability to lead a normal life. Furthermore, she incurred medical, hospital, and other out of pocket and health care expenses as a result of her injuries, the future medical and health care expenses being reasonably certain to occur. She also sustained aggravation or acceleration of preexisting conditions. These damages are permanent or continuing in their nature and the Plaintiff will continue to sustain and incur these damages in the future.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant CARNIVAL for compensatory damages and the costs of this action.

### COUNT III – GENERAL NEGLIGENCE

Plaintiff re-alleges all allegations pled in paragraphs 1 through 20 above as if alleged fully herein.

41. At all material times, including the injury date of March 5, 2022, the subject vessel, including the ramp referenced above, were owned, operated, and controlled by CARNIVAL.

42. At all material times, CARNIVAL owed the Plaintiff, as a fare-paying passenger lawfully onboard the subject vessel it operated, a duty of reasonable care, including the duty to take reasonable steps to warn passengers, such as the Plaintiff.

43. Defendant and/or its agents, servants and/or employees breached its duty of reasonable care under the circumstances to Plaintiff through the following acts and/or omissions:

   a. Failure to use a reasonably safe gangway; and/or

   b. Failure to promulgate and/or enforce adequate policies and procedures for use of gangways; and/or

   c. Failure to adequately train crewmembers in the assistance of passengers using the gangway; and/or

   d. Failure to analyze prior accidents aboard Defendant's vessels occurring in the same area and/or so as to remedy such hazardous conditions; and/or

   e. Failure to promulgate and/or enforce adequate policies and/or procedures regarding the disembarkation of passengers; and/or

   f. Failure to promulgate and/or enforce adequate policies and/or procedures regarding the assistance of passengers utilizing assistive devices such as wheelchairs and/or motorized scooters; and/or

   g. Failure to adequately train crewmembers regarding how and when to assist disabled passengers during disembarkation; and/or

   h. Failure to adequately and/or reasonably assist Plaintiff during disembarkation; and/or

   i. Failure to comply with safety codes and standards designed and promulgated to reduce the risk of the type of accident the Plaintiff suffered from happening; and/or

   j. Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of accident suffered by the Plaintiff; and/or

k. Failure to implement available safety and ergonomic standards designed to reduce and/or prevent the type of accident the Plaintiff suffered from happening, all of which resulted in the Plaintiff being injured; and/or

l. Knowing from previous similar incidents of the likelihood of such an accident, yet failing to take steps to correct the conditions causing the accident.

44. At all material times the ramp where the Plaintiff was thrown from her wheelchair was in a high traffic area since they were specifically designated for passengers entering and leaving the ship. No alternative safe means of ingress or egress were available at the time to passengers entering and exiting the ship, such as the Plaintiff.

45. At all material times, CARNIVAL knew or should in the exercise of reasonable care have known of the dangerous condition of the ramp as referenced above.

46. CARNIVAL's actual or constructive knowledge was derived from prior use of the same or substantially similar ramps, prior fall instances on the same or similarly configured ramps, industry standards regarding ramps, the recurring nature of the dangerous conditions on the ramp, and the length of time the ramp had been in an unsafe condition before the Plaintiff was thrown from her chair, a length of time sufficient to invite corrective measures.

47. At all material times the dangerous condition of the ramp referenced above was neither known nor obvious to the Plaintiff, due to her inability to detect the change in elevation.

48. Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition of the ramp where Plaintiff fell, CARNIVAL failed before the time of the Plaintiff's injury to take reasonable measures to maintain the ramp in a reasonably safe condition by correcting its dangerous condition, by adjusting the positioning of the ramp for wheelchair passengers including the Plaintiff in order to prevent a fall due to the conditions.

CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent. Defendant is vicariously for the negligent acts of the Defendant's employees and as such "a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021). See also *McLean v. Carnival*; Case No.: 22-CV-23187-Scola, Ecf. No. 26; (dated January 24, 2023).

49. As a direct and proximate result of CARNIVAL's negligence as described above the Plaintiff was thrown from her wheelchair and has thereby sustained and will continue in the future to sustain the damages alleged above.

50. As a direct and proximate result of the fall described above, the Plaintiff was injured in and about her body and extremities. She suffered pain therefrom, mental anguish, disfigurement, and the inability to lead a normal life. Furthermore, she incurred medical, hospital, and other out of pocket and health care expenses as a result of her injuries, the future medical and health care expenses being reasonably certain to occur. She also sustained aggravation or acceleration of preexisting conditions. These damages are permanent or continuing in their nature and the Plaintiff will continue to sustain and incur these damages in the future.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant CARNIVAL for compensatory damages and the costs of this action.

### **DEMAND FOR ADVISORY JURY TRIAL**

The Plaintiff hereby demands trial by jury of all issues so triable of right. This matter is being filed pursuant to Defendant's federal forum selection clause within its passenger ticket contract and, because there is no diversity among the parties, it is brought under the admiralty and maritime jurisdiction of the Court. This is an admiralty or maritime claim within the meaning of

Rule 9(h). Plaintiff requests an advisory jury trial pursuant to the remedies saved under the Saving to Suitors Clause of 28 U.S.C. §1333. See *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454-55 (2001) ("Trial by jury is an obvious... example of the remedies available to suitors."); see also *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1063 (11th Cir. 1996). It is within the discretion of the court to allow for an advisory jury in an admiralty or maritime claim.

Dated this 3rd day of March, 2023.

**HOLZBERG LEGAL**
7685 SW 104 Street, Ste. 220
Miami, Florida 33156
Tel: 305-668-6410

BY:   */s/Glenn J. Holzberg*
      GLENN J. HOLZBERG
      Fla. Bar # 369551
      glenn@holzberglegal.com
      erika@holzberglegal.com
      LOUIS M. HOLZBERG
      FNB: 1011340
      louis@holzberglegal.com
      erika@holzberglegal.com


**LINTON ROBINSON & HIGGINS, LLP**
633 N.E. 167th Street, Suite 1201
Miami, Florida 33162
TEL: 305-614-0704

By:   */s/C. Linton Robinson*
      C. LINTON ROBINSON, ESQ.
      FBN: 179116
      clr@litigationattys.com
      clerk@litigationattys.com
      clerk2@litigationattys.com
      ANNA A. HIGGINS, ESQ.
      FBN: 235740
      ahiggins@litigationattys.com
      clerkny@litigationattys.com
      info@litigationattys.com